Good morning, Your Honors, and may it please the Court, Doug Keller on behalf of Mr. Frazier. The District Court erred in this case when it refused to hold a competency hearing for Mr. Frazier despite the fact there was reasonable cause for it to do so. Specifically, before trial, Mr. Frazier's counsel brought to the Court's attention that Mr. Frazier was struggling with linear thought and he was struggling paying attention to what Mr. Frazier's counsel was telling him. In addition to what counsel himself had observed through his dozen visits with Mr. Frazier, Mr. Frazier's counsel's associate and investigator had also visited with Mr. Frazier and observed the same thing. Judge Cardone Well, the District Court did a pretty thorough  I would disagree, Your Honor. The District Court asked Mr. Frazier a couple of questions, but the District Court's interactions with Mr. Frazier were qualitatively less meaningful than Mr. Frazier's own counsel would have been over the course of six months. Here, all the District Court… Ms. Norton Well, as I read the record, counsel didn't say that this had happened over a series of six months. He said that he had recently noted this, and, you know, nobody's there, so we have to trust what the District Court's Mr. Frazier is a lot more competent than some lawyers that come before us. Judge Cardone Well, a few things, Your Honor. First, it's true that things were getting progressively worse over time, but defense counsel had been able to observe Mr. Frazier over that extended period and could see Mr. Frazier deteriorate. And the same reason why this court might want to defer to a cold record with respect to the District Court are the exact reasons why the District Court should defer to defense counsel, who, after all, is in the best position to know whether a client is able to assist  Mr. Frazier He waits until the Friday before the trials to start to finally come up and say, hey, I've got a problem with this guy. Judge Cardone That's true, Your Honor, but that's when the problem arose. In defense counsel's letter to the court, he acknowledged this was on the eve of trial and said this was the earliest possible moment I could raise this concern. Mr. Frazier Excuse me. Finish your answer. Judge Cardone The competence termination is obviously an issue there that sometimes even mid-trial, the defendant's competency might be called into question. Mr. Frazier Was there any indication or evidence on the day of trial that he was under the influence or was having any difficulties understanding what was going on? Judge Cardone Well, the only evidence would have been the comments from defense counsel himself, who stuck by his claims that he had concerns about Mr. Frazier's competency. And Mr. Frazier himself, when asked, while never directly addressing whether he felt he was competent or not, did say that he was having mental health issues. He had been prescribed two different anti-psychotic medications. So those certainly were red flags for the district court. And again, the issue here is not whether ultimately he was incompetent or not, but instead whether he merely raised a reasonable cause to believe he was incompetent. And that's a much lower standard. Mr. Frazier That basically was my question. What would have indicated to the judge that on the day of trial, he's having difficulty consulting with his lawyer and understanding what's going on? Judge Cardone The indication he would have had is from defense counsel himself, who told the judge essentially that he had concerns. Mr. Frazier About things that he'd observed in the past, but not that particular day. Judge Cardone I don't think so, Your Honor. The defense counsel wrote the letter, I think, on the 31st. And then two days later, they had the hearing. And at that hearing, defense counsel essentially reiterated what he had said in his letter, that he was having concerns with Mr. Frazier, his ability to pay attention. And in response to all this information to the district court, the district court never really analyzed the assist counsel prong of the competency test. Instead, all the district court said in denying Mr. Frazier a hearing was simply that he doesn't appear delusional and he can express himself. And while that might have been true, that's not the competency standard. The competency standard asks whether there's a reasonable cause to believe he could assist counsel. So, for instance, in the Drogue case, the Supreme Court case, the defendant in that case wasn't delusional. And a psychiatrist had found that he was well-oriented and could express himself. Nevertheless, in that case, the Supreme Court held that that defendant was incompetent. So I think there was just a mismatch in what the district court was trying to do and what the standard actually requires. But even if the district court applied the right standard, all the district court had to support its opinion that Mr. Frazier, there wasn't even a reasonable cause to believe Mr. Frazier was incompetent, with its own brief observations of Mr. Frazier. And, well, again, I understand this court will typically want to defer to the trial court who's going to see the defendant and have a better sense of whether the defendant's competent or not. Here, this wasn't a case like Bernard, for instance, where the district court had an entire trial to observe the defendant before this hearing date on June 5th, the first day of trial. The district court had seen Mr. Frazier twice, and both those hearings were over a year before that hearing. Mr. Frazier had written two letters to the district court. One of those letters was a year old. The other letter was a little more recent. It was a couple weeks before the hearing. It's unfortunately not at the record. But that's the entirety of the district court's interaction with Mr. Frazier. He essentially had to go on a letter and his brief back and forth with Mr. Frazier at this initial hearing on the day of trial. He had to weigh that against what defense counsel, who had substantial amount of experience with Mr. Frazier, thought about Mr. Frazier's competency. What counsel thought was that this defendant was taking drugs in jail. Now, what indication is there that if he's not on drugs that he has difficulty talking to his lawyer, understanding what he's told and understanding the proceedings? Well, I mean, defense counsel did speculate and did think that the source of what he was seeing, the glazy eyes, the inability to pay attention, he sourced that to what he thought was illegal drug use. And Mr. Frazier obviously disputed that. But the point of what the district court should have focused on was not so much at that point what was causing this glazy eyedness, what was causing Mr. Frazier's inability to pay attention. He should have been figuring out given that that's what defense counsel observed, can he assist counsel? It might have been illegal drugs. It might have been that he was being over prescribed his Prozac, his Neurotin. It just wasn't clear. And it's not clear because the district court held a pretty short hearing about this and didn't really push back at all and inquire into sort of anything about what might be causing the source of this. And that's what should have happened at a competency hearing. Mr. Frazier could have been evaluated by a psychiatrist. More information could have been gathered. And then they could have made a proper determination on Mr. Frazier's competency. But that never happened here. So if the defense lawyer says, Judge, when I talked to him before, what I'm seeing and what I'm hearing from him and my evaluation of his being in front of me, leads me to think he's got mental, he may be incompetent. But when he's in front of the judge and the judge is doing the same thing, I'm looking at him and I'm listening to him and I don't see a problem. Are you saying then the judge has an obligation to send him for a mental evaluation when the judge's own personal observations are completely different from what the lawyer's telling him and what the judge sees indicates he's competent? Well, I think at least in this case, I mean, a few things, Your Honor. First, there wasn't just defense counsel's observation. I will note that Mr. Frazier himself said he had mental health issues. He had just been released from prison for rape for 16 years. He never committed. He was on at least two antipsychotic medications. So there were other red flags besides what defense counsel observed. But setting that court should have put more weight into what defense counsel was telling him. So, yes, the district court had not had the ability to have a brief back and forth with the defendant. But that's just qualitatively less meaningful than what defense counsel would have gotten. And the conversations defense counsel have with his client are going to be different than the conversation that was had at the bench in this case. The defense counsel is going to be asking Mr. Frazier questions about what happened with the crime, what he observed, those sorts of things he's going to have to draw out of his client to properly defend him. And I think that's what was happening here is that Mr. Frazier wasn't able to do that, wasn't able to pay attention, wasn't able to follow those sorts of questions, which are going to be different than the questions the district court was asking. And again, I'll remind the court that here, all the district court ended up saying was that Mr. Frazier is not delusional and he can express himself. And certainly this court could defer to the district court on those two points. And I won't quarrel with those two points. But the competency determination is much more diverse than simply those two things. And so if the court has no further questions on that issue, I was going to turn to the C plea issue. The district court also erred when it sentenced Mr. Frazier, because rather than ask what sentence was sufficient but not greater than necessary, which is the sentencing standard, the district court in effect applied an appellate presumption of reasonableness not to the guideline, but to the C plea, saying, quote, that the sentence was within the range of reasonableness. And while one could debate whether the sentence should be higher or lower here, the parties had come to an agreement and it found no reason to find that unacceptable. It gave him the sentence he and his lawyer wanted and agreed to. That's true, Your Honor. Despite that fact, though, the district court still I understand, but that's the sentence he wanted and agreed to and gave up, waived his right to appeal based on getting that sentence. That's all true. At the same time, though, the district court still has independent obligation. And that is an important part of the process. And that's part of what Mr. Frazier bargained for. Part of what he bargained for was to go before the judge and have the judge decide whether to not only accept the plea but to potentially give him a lower sentence. Certainly one option in a case like this is you go into court and the judge looks at the sentence and says, you know what, I think I'm going to give you 10 years as opposed to 12 years. That's part of the process. And at that point, the government, if that would have happened, could have withdrew from the plea or it could not have. And we even see that expressly in the plea as part of what Mr. Frazier bargained for. Paragraph 15 of the plea sort of memorializes the fact that the district court does have an independent role. So while, yes, the parties did agree, there is another player. There is another player there and that was the district court. And respectfully, I think here the district court was able to determine independently what sentence was sufficient but not greater than necessary. In other words, you think that the district court should have gone through the 3553 factors? Absolutely, yes. Well, are you familiar with Freeman v. United States? I am, Your Honor. So what do we do about that Supreme Court case? Well, all that case says is that, I mean, that case affirms the fact that the defendant, I'm sorry, the district court has an independent obligation to determine the sentence. It says sentencing under C agreements is different. At the time of sentencing, the term of imprisonment imposed pursuant to a C agreement does not involve the court's independent calculation of the guidelines or consideration of the other 3553A factors. The court may only accept or reject the agreement. And if it chooses to accept its sentencing, the court may only impose the term of imprisonment the agreement calls for. The court may not change its terms. Now, that was just to set on my ear concurring, but the concurring opinion was controlling because, as you know, it was a fractured 4-4 opinion. It seems to me that she directly rejects the argument that you have to consider these 3553 factors. Well, a few things, Your Honor. First, I think even in that quote, it's certainly the case that the district court doesn't have to independently determine the sentencing. I thought you said that you had to consider the, that's why I asked you to begin. It has to consider, but she says you don't consider the 3553 factors. Well, first, that was the concurring opinion, but two, I think what the court, there was just. Well, take it from me, it's controlling. Just for purposes of our argument here, you can argue that it's not. Sure, of course. So even if that is controlling, I think what the court in that case was dealing with something fundamentally different than what's at issue here. I don't think what Justice Sotomayor is saying is that you have to determine what sentence is sufficient, but not greater than necessary. And that's what controls. But that's part of the court deciding whether or not to take the C-Plea. Once you've taken the C-Plea, you've essentially determined that you believe that's an appropriate sentence under what's been given to the district court at the time of getting that. Once you accept the plea, certain things follow. You don't then independently sentence. But the predicate to accepting the C-Plea, it must be the case that the predicate to accepting the C-Plea is first independently determining whether that sentence is sentencing. No, I take what I read to you where she says it does not involve the court's independent calculation of the guidelines or consideration of the 3553 factors is that we regard this as a contract between the parties. And the party, the defendant, is responsible for determining whether, in fact, this is consistent with 3553. And that the court either accepts it or rejects it. I mean, that's what she says. Right. I don't have the quote in front of me, but I would just push back a little bit and say I think the court in that case was thinking about a fundamentally different problem than the question here. And the reason partly I say that is that I don't think it could possibly be the case that in a C-Plea context, the sentencing statute somehow doesn't control. And I think at the end of the day, that's the overarching principle. And I know the for justice plurality is clear on that point. And I don't... Well, you consider the sentencing guidelines. That's true. But you don't consider the 3553 factors. That's what she says. I would just dispute that I think what she meant in context was different than you're saying, Your Honor. But I certainly take your point. But I would just push back and say that can't be the case that you don't consider the factors before you even accept the plea. I think it is the case that once you accept the plea, the judge is tied to his or her hands. And that's the sentence you get, independent of anything else. But I think the predicate to all of that before you accept the C-Plea is going through the factors independently determining that, yes, in fact, I agree this sentence is sufficient but not great and necessary. If the court has no further questions, I'll reserve the rest of my time. Okay. Thank you. Mr. Keller. Mr. Suffolk. Good morning. John Suffolk, Assistant United States Attorney from the District of Maryland. May it please the Court. The District Court did not abuse its discretion in this case by not holding a competency hearing prior to Frazier's trial or, as it turned out, in February of 2011. He appeared for a motions hearing in December of 2011. Defense counsel, as Judge Cogburn noted, the business day before trial, I believe it was actually midday of the business day before trial, filed a letter raising concerns about Mr. Frazier's competency. Mr. Frazier then appeared for trial on June the 3rd of last year. And as Judge Motz noted, and I think what's important in telling in this case, is there was lengthy colloquy between Judge Garbus and Mr. Frazier and his counsel that day. And I'm not talking just about the closed proceeding that I was not, the government was not in attendance, but during the Rule 11 colloquy as well, where Mr. Frazier was able to lucidly and intelligently respond to questions both by the court, by his own counsel. There's no evidence of irrational behavior before the court. Again, he was able to communicate with the court. He responded to all the court's questions. During the proceeding, he did not demonstrate any demeanor that would raise questions about his competency, as noted by Judge Garbus, the district court in this case. What I also think is telling that the court did not discuss during opposing counsel's argument is that Mr. Frazier's counsel raised issues about his drug use. Now, what I think is impressive in this case, and I didn't know at the time, the government didn't learn about this until the appellate record was created, is that Judge Garbus actually obtained medical records through the marshal service from the detention facility, the Chesapeake detention facility, where Mr. Frazier was housed during the entire proceeding. Those medical records indicated that Mr. Frazier was not taking illicit drugs. All of his urinalyses were clean. Then, during the Rule 11 college- I think that helps your case. I think it does. That he's acting crazy, but he's not taking illegal drugs. Well, I don't think there's evidence that he's acting crazy. The only evidence that we have that he's acting crazy is from his defense lawyer. Again, as you noted, Judge Traxler, when he's in front of the court, he's acting fine. On that one day. On that one day. But what evidence do we have that he's not acting out of line or showing irrational other than defense counsels? This didn't come up until the day before trial. We didn't hear about this a month before trial or two months before trial. And again, all the proceedings where Mr. Frazier appeared before the court, he appeared just fine. In that case, and again, I think it's commendable that Judge Garbus was able to obtain medical records on such short notice on a Friday afternoon from the marshal service with a trial scheduled on Monday. And those records tell us two things. That he's taking his medications as prescribed. He had issues with stress and anxiety. And how do we know that, that he's taking it? It was noted, I think Judge Garbus noted in the medical records that the records indicated that he was taking and under oath. I mean, he was being given it. He was being given medications. And I think I don't know if he's taking it or not. No, Your Honor. None of us are present when he's given the medications, but I assume that based on the medical records, if he goes to the medical facility and he's given his medication, that he takes his medication. But we don't know that, Your Honor. We don't know that. Those things become articles of commerce in a detention center. Sometimes, I believe you're probably right, Your Honor. Sometimes they do. But he, again, at the Rule 11 colloquy, under oath, he told the court that he was taking his medications. Told the court that he hadn't taken any drugs or consumed any drugs or alcohol for one week prior to the Rule 11 colloquy. So I think all of those pieces collectively support the district court's decision that there is no need for a confiscatory in this case. Because what evidence was before the court? We have a defendant who is able to respond to the court's questions and is denying any drug use and is admitting that he's taking his medication as prescribed. I'm just not sure what Judge Garbus was supposed to do in this would have delayed trial and said a competency hearing would be required. I can guarantee you this. Every defendant at the Chesapeake detention facility would raise an issue of competency on the eve of trial in an effort to delay the trial. Well, but the situation is different in that you have a pretty well-established and well-respected defense lawyer initiating this. I don't take any bad inference that this is on the eve of trial and I also think that it's a pretty reasonable letter and as your colleague mentioned in court, the defense counsel seemed to feel still at the end of the hearing or whatever it was, the dialogue, the initial dialogue the judge had with the defendant, he stood by his contention that there was a problem. Now he did think there was drug misuse and the record seemed to indicate that that's not so. The defendant said it wasn't so. That's correct, your honor. The medical records say it wasn't so. The defendant said it wasn't so. But I also think it's important to note that that day as well, that defense counsel opined that Mr. Frazier was competent when at the time that we were ready to, the government was ready to proceed to trial. There were some brief discussions. Defense counsel inquired with government counsel whether the plea offer that had been tendered from actually almost the initiation of the case, the indictment, was open and government counsel said, yes, plea is still available and he decided to take the plea and he stood in front of the court and answered questions under oath. His counsel said he reviewed the plea letter with the defendant and the defendant, I think the quote was, asked intelligent questions about the plea and the court asked him several questions through the rule, typical during a Rule 11 colloquy. There was no sign or indication that he didn't understand what was happening or that he didn't want to enter into the plea. In fact, he noted on several occasions during the Rule 11 colloquy that he did want to plead guilty and that the 144-month, the 12-year sea plea is exactly what he wanted to do, faced with very serious charges and some very steep mandatory minimum sentences had he proceeded to trial. But outside of what we discussed, there really was no evidence or reasonable cause, if you will, for Judge Garbus, to hold a conferencing hearing. His actions cannot be described as arbitrary or capricious in this case. In fact, I think Judge Garbus took it, actually took it a step above by requesting the medical records from the Marshal Service, from the Chesapeake Detention Facility, to flesh out some of these issues that were raised in defense counsel's letter. So, taking the totality of the circumstances, if you will, there's just no basis, no reason for Judge Garbus to have a continuance and order a competency hearing because at that point, you have a defendant who is lucid, answering all the court's questions, indicates that he's able to understand, denying drug use, the medical records indicate that he's not on any drugs, and he took a plea that had been on the table for over, maybe it was almost two, I believe two years, or maybe not quite two years, a year and a half, and finally decided to take the plea agreement. So, outside of those facts, Your Honors, I don't think the district court acted inappropriately or arbitrarily or capricious. I think they, I think Judge Garbus did exactly what he was supposed to do. Why don't you switch over to the argument on the sentencing? Sure, Your Honor. The plea agreement in this case, and government counsel kind of was shocked at the oversimplify, but this essentially is a contract. When the government enters into what we call a C plea under Rule 11C1C, I believe it is, it's a contract, and it's an understanding that the defendant accepts the term of imprisonment that's contained in the plea, as does the government, and it's also accepted that both parties believe that sentence to be within the realm of reasonableness. Have you ever heard of buyer's remorse? Yes, I have, Your Honor, numerous times. Unfortunately, as a prosecutor, you hear about buyer's remorse on several occasions, but unfortunately, Your Honor, buyer's remorse should not be permitted to upend what is an otherwise valid plea agreement. The Rule 11 qualically was proper. The plea agreement was proper. There's no errors or problems with the way the Rule 11 colloquially, and I think, now Judge Garbus perhaps didn't go into great detail, but if you look on page 75 of the joint appendix, he does indicate that he's aware of the facts of the case, and he discussed the different plea scenarios, and the different situations, the different defendants, and ultimately concluded that sentence is in the range of reasonableness, and that's at the bottom of joint appendix page 75. So he's accepted the plea before he does that. He really should have made that determination and then accepted the plea. That's correct, Your Honor, but the overall gist is, and I think as you noted in the Freeman case, he did accept the plea, and then he did make this finding that it was reasonable, and again, I think the, again, not to oversimplify, but it's a contractual agreement, and just as Judge Traxler noted, maybe perhaps now Mr. Fraser is having some buyer's remorse, but the government should be able to rely on the cornerstone of C pleas, that if it enters in, that the parties enter into a C plea, that that's the plea, that's the deal, and as long as the plea agreement is rule 11 colloquy is held in proper fashion, that that should be the end of the story for the plea and sentencing phase of the case, and that's exactly what we have here. Mr. Fraser waived any right to appeal the sentence. There's no technical or clear error involved in the plea agreement with the rule 11 colloquy, so the appeal waiver that's contained in the plea agreement should be enforced, so I guess the, it's taking, Judge Traxler don't mean to go back and bring back the competency, but if the court deems that Judge Garbus did not abuse his discretion, then that takes us to the plea agreement where he has waived his right to appeal. On the other hand, if court finds that there should be a competency hearing, well, obviously, then there's an issue as to whether the defendant was competent to even enter into the plea, which takes us backwards anyway, so the government's position is that we have a valid plea, a valid rule 11 colloquy, the defendant's competent, the court determined that his plea was entered knowingly and voluntarily, and because of that, we have a valid appeal waiver, and the legal part of the so if the court doesn't have any further questions. I think we understand your position. All right, thank you. Mr. Keller. Just a few points, Your Honor, on each of the two issues. First, on the competency issue, I would take a, I would dispute a little bit about the drug use issue. The government seems to rely on that to say that, well, we don't know if he was on drugs or not. That's therefore a good fact for the government, but I think it actually works the other way. The fact of the matter is no one knew why Mr. Frazier was acting the way he was. Defense counsel thought, and I think based on what we know now incorrectly, that it could be sourced to drug use, but the fact that we don't know what was causing Mr. Frazier's behavior should have required the district court to do more than what it did instead of simply saying, well, there's a dispute there. I'll leave it alone. Second, the government never really grapples with the fact that apparently the court did its own personal investigation into the potential problems this, your client was having by calling the jail and checking, which is unusual. It's certainly unusual. And, you know, obviously to its credit it did that, but I think that sort of shows where its focus was not in the right place, that the issue really wasn't ultimately at this early stage what was causing Mr. Frazier to behave the way he was behaving. Instead it was given what defense counsel himself has observed, what do we do with that? Is that enough to establish reasonable cause? And here I think it was. And second, I think the government's focusing a lot on this court and us here weighing whether we think the reasonable cause standard has been met. And that is one of my arguments, but I don't want to be lost in this, is that independent of whether the court abuses discretion by observing what it observed, deciding what it decided, it simply applied the wrong standard. When you look at what it said it was doing, it just wasn't asking the right question. It said that Mr. Frazier wasn't delusional essentially and that he could express himself. That's it. It never addressed what I think is the real issue of whether there's reasonable cause to believe he could assist counsel given what defense counsel himself had observed. But what defense counsel had observed, and it stated he'd observed recently, at least by the time that they came to the point where they were going to talk about the plea and actually take the Rule 11, the same defense counsel said he was competent. At that time he was in the right mind to make this decision, that he did go forward with the plea. So the same reporter who is saying that something needed to be looked at says on the day that he decides he's going to plead, he was competent. Well, I would disagree, Your Honor. Defense counsel did say immediately before Mr. Frazier ultimately pled that I think he's competent. But I really think you have to read what defense counsel was saying in context. This is the same defense counsel who had been claiming up to that morning that Mr. Frazier wasn't competent. The judge tells him, I hear what you're saying to me, but that's not enough. There's no basis. And so defense counsel then operated in the shadow of that ruling. So he didn't go back and say, Your Honor, I just want to reiterate that based on what I said this morning, I have concerns. I now think he's competent. Instead, he simply just moved forward given what the court had already ruled. This is something you obviously see every day in your courtroom of, you make an evidentiary objection, defense counsel then acts accordingly to your ruling on that objection. The defense counsel isn't necessarily going to constantly go back and say, Your Honor, I want to preserve what I said earlier. Instead, you simply move forward with what the court had said. And here, defense counsel had been told what you observed wasn't enough. And so I think he acted appropriately in light of that ruling moving forward. Because the other reading of the record essentially is that after months of observing Mr. Frazier and claiming that very morning he had concerns about Mr. Frazier's competency, all of a sudden he changed his mind. I just don't think that's a reasonable reading of the record. I think what's much more reasonable, the much more reasonable reading is that he simply acted in reliance on what the district court had already told him that morning. In other words, you don't think there's any place in this record where defense counsel says, indicates that he thinks that Mr. Frazier is now competent. He definitely does say he is competent. I just think you have to read that saying in context of what he meant. Do you know where that is? I've been looking for it. I believe it's... I thought he said that too. J51. Where he says, I talked to Mr. Frazier, you know, he's competent. And so you can't take that one sentence in isolation. And I will certainly admit it looks like he's saying he's competent. But I do think you have to read it reasonably and in context. I think when you read it reasonably in context, what I think he's just saying is, look, you've already shot me down early this morning. I understand that. So given that you've told me isn't enough, he's competent. You have to take him in his word unless you think he's saying, my gosh, this plea's so good, I got to get this lunatic, this plea right now. I mean, if he's being honest about it, as you're saying that he was when he, on Friday, sends the letter. And he believes he's competent when he takes the plea. On that day, he'd been lucid apparently for a long time because there was nothing to the court from the lawyer all the way up to the end. Then there's some episode or episodes that cause him to write the letter on Friday. But then on the day that he takes, that he decides he's going to enter into the plea, the attorney says he's competent. He can take, he can do this. He knows what he's doing. Well, the only thing I would dispute is what he meant by that. And I certainly understand what you're saying, Your Honor. But I think you do have to read it in context. And if I were him, I think I would have said something similar. That I raised my concerns, that was my ethical obligation and my obligation of the law to say, Judge, here are my concerns. The judge is telling me that those concerns do not mean your client is incompetent. And so then I'm going to move forward assuming that the judge has told me he's competent based on what I described. And I'm going to speak in light of that. That's exactly what happened here. But he says that in the context of there's this whole dialogue about what the plea is. And in the course of it, he says this is what his client always wanted. They wanted to get the gun out, but they were ready to plea to the number of years. And the client pipes up, yes, that's right. That's what he's wanted. I mean, it's a tough record for your argument. Well, it's tough. But I just want to say, I see I'm going over my time. But if I could just say one more thing. I think the other reading of the record, I think, doesn't get the government anywhere. Because if it is true that defense counsel went from the morning of the hearing saying, I think my guy is not competent, to by the end of the day saying, I think he's competent, then I don't think that, I think it would be entirely arbitrary for the district court to say, OK, well, the defense attorney now thinks he's competent. I'm going to rely on that. If, in other words, if in the morning the district court should have held a hearing because defense counsel's comments should have raised reasonable cause, it can't be the case that the when it later relies on defense counsel flip-flopping positions on the same day. I think you have to take him at his word in the morning. And if he was acting completely irrational by the end of the day saying, oh, I think he's competent now, I don't think that's enough. But again, I just don't think that's the most reasonable reading of the record. I think defense counsel here was simply responding to what the court had told him earlier that day.  That's your court appointed. We appreciate very much your undertaking representation of Mr. Frazier. This case will conclude the service of the judge to my left, Judge Cogburn from the Western District of North Carolina. It's been a pleasure having you here and we look forward to your return. Thank you very much. I will come down. I'll ask Clark to adjourn court and then we'll come back and re-pass. This honorable court stands adjourned. Sinead Dye, God save the United States and this honorable court.
judges: William B. Traxler Jr., Diana Gribbon Motz, Max O. Cogburn Jr.